# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**KIMBERLY DAWN DILDAY,**

        **Plaintiff,**

v.                                                                                    **Case No: 6:20-cv-2070-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION[1]

**THIS CAUSE** is before the Court on Claimant's appeal of an administrative decision denying her application for period of disability, disability insurance benefits, and supplemental security income. In a decision dated May 5, 2020, the Administrative Law Judge (ALJ) found that Claimant had not been under a disability, as defined in the Social Security Act, from February 13, 2018, the alleged disability onset date, through the date of the ALJ's decision. R. 31. Having considered the parties' memoranda and being otherwise fully advised, the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **AFFIRMED**.

**I.**    **Issues on Appeal**

Claimant raises the following three arguments on appeal:

1) The ALJ did not properly discount Dr. Weiss's medical opinion. *See* Doc. 25 at 21.

2) The ALJ did not properly discount Dr. Austin's medical opinion. *See* Doc. 25 at 25.

3) The ALJ improperly relied upon Dr. Rodriguez's medical opinion. *See* Doc. 25 at 28.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Docs. 20; 26.

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

## III. Discussion

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips v. Barnhardt*, 357 F.3d 1232, 1238 (11th Cir. 2004). "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[2] The

---

[2] Here, in assessing the Claimant's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently reach overhead, push, pull, and/or operate hand controls with both upper extremities; can occasionally balance on uneven surfaces; can occasionally stoop, kneel, crouch, and crawl; can occasionally climb stairs and ramps; can never climb ladders, ropes and scaffolds; and can occasionally be exposed to vibrations, unprotected heights, and moving

consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed her claim after March 22, 2017,[3] 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[4] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated

---

machinery parts. The claimant requires a moderate noise work environment, as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations. She is able to understand and remember simple instructions, make simple work related decisions, and carry-out simple instructions.

R. 24.

[3] Claimant filed her claim on August 3, 2018. R. 18.

[4] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record.[5]  In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors").  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

### A. Dr. Weiss's Opinion

Claimant first argues that the ALJ did not properly discount Dr. Weiss's medical opinion.  The substance of Claimant's argument is not that the ALJ failed to weigh the opinion, but rather that the ALJ did not assign enough weight to the opinion based upon the available evidence—i.e., the ALJ incorrectly weighed the evidence.  But reweighing the evidence is not this Court's function.  *See Winschel*, 631 F.3d at 1178 (11th Cir. 2011).  And even if the evidence preponderates

---

[5] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

against the ALJ's findings, the Court must affirm so long as the ALJ's decision is supported by substantial evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–1159 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

The ALJ stated the following with respect to Dr. Weiss's opinion:

The record includes very little objective evidence postdating Dr. Buggia's consultative examination report. A February 2020 report by Gary Weiss reflects similar observations to those he had made on October 8, 2018, a few days after her second accident. (11F at 21, 22). The similarly between these observations, and their inconsistency with those made by other treating and examining providers in February 2020, raise doubts as to whether Dr. Weiss's February 2020 physical examination report reflects his contemporaneous observations.

In determining the claimant's residual physical functional capacity, I was not persuaded by two opinions provided by Dr. Weiss. In November 2018, he opined the claimant was unable to sit for prolonged periods. (5F at 9). This finding is not supported by Dr. Weiss's own treatment notes, which do not reflect a chronic sitting limitation; nor are they consistent with the rest of the above-discussed evidence, and the record as a whole, which does not establish any such limitation. Dr. Weiss's September 2019 opinion includes several extreme limitations, including a requirement that the claimant lie down four hours in an eight hour workday, a total ban on lifting, carrying, or any postural activities, and a prediction that she would miss three or more days of work per month. (10F at 1-4). These findings are not supported by Dr. Weiss's own treatment notes, and are wildly inconsistent even with a reading of the above-discussed evidence that gives the claimant the benefit of any reasonable doubt. For example, Dr. Weiss' contention that the claimant can never bend is remarkably inconsistent with Dr. Buggia's observation that she was able to bend over and touch her toes. (7F at 5, 6). Accordingly, I did not find his opinion persuasive.

I also considered the opinions of the State agency's medical consultants, which were rendered in September 2018, just prior to her second accident; and in February 2019, about four months after that accident. (1A; 3A). Although these opinions reflect the worsening in the claimant's condition after this accident, they do not support the extreme limitations suggested by Dr. Weiss, or the lifting and carrying limitations suggested by Dr. Buggia. David Guttman, M.D., who reviewed the record at the initial level, opined the claimant could perform work requiring light exertion, frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs, occasional climbing of ladders ropes, or scaffolds, and no

> concentrated exposure to hazards. (1A at 8-10). Christina Rodriguez, M.D., who reviewed the record at the reconsideration level, opined the claimant remained capable of performing work requiring light exertion, with no concentrated exposure to hazards, but now could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and could never climb ladders, ropes, or scaffolds. (3A at 10-12).
>
> . . .
>
> The mental treatment and examination evidence has been extensively discussed in the prior finding. In determining the claimant's residual mental functional capacity, I was not persuaded by the opinions of Drs. Austin and Arroyo, the mental CEs, for the reasons discussed in that finding. (8F at 6). I was also unpersuaded by the opinion of Dr. Weiss, who indicated the claimant was unable to tolerate stress, a finding that is not supported by his own treatment notes, and is inconsistent with the previously-discussed evidence, and the record as a whole. (10F at 1-4). As discussed in the prior finding, while the record includes some worrying test results regarding the claimant's intellectual and memory functioning, treatment providers have not observed signs consistent with greater than moderate limitation in the claimant's ability to understand, remember, apply information, concentrate, persist, or maintain pace.

R. 27–29.

The ALJ found Dr. Weiss's opinions to be inconsistent with Dr. Weiss's own treatment notes and with the medical evidence discussed. For example, in discussing the medical record the ALJ found that while treatment providers found significant symptoms, "[l]ater examinations reflect[ed] significant improvement, [with] treating and examining providers observing non-antalgic gaits and intact sensation. (6F at 2; 7F at 6)." R. 26. Further, Dr. Weiss's second opinion included "several extreme limitations, including a requirement that the claimant lie down four hours in an eight hour workday, a total ban on lifting, carrying, or any postural activities, and a prediction that she would miss three or more days of work per month." R. 28. The ALJ found that these limitations were not supported by Dr. Weiss's treatment notes and were "wildly inconsistent even with a reading of the above-discussed evidence that gives the claimant the benefit

of any reasonable doubt."[6] *Id.* More specifically, regarding Dr. Weiss's limitation that Claimant could never bend, the ALJ found this limitation was "remarkably inconsistent with Dr. Buggia's observation that she was able to bend over and touch her toes. (7F at 5, 6)." *Id.* The ALJ also considered the opinions of State medical consultants, which he found did not support Dr. Weiss's opinions. *See* R. 28.

In sum, the ALJ found Dr. Weiss's opinions to be unsupported by Dr. Weiss's treatment notes, inconsistent with the record evidence, and inconsistent with other medical opinions of record. Thus, the ALJ properly considered the required factors of supportability and consistency.[7] Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011). The ALJ's findings as to Dr. Weiss's opinions are supported by substantial evidence, and thus the Court finds no reversible error.[8]

---

[6] The ALJ thoroughly discussed the medical evidence of record in another portion of the decision. *See* R. 22–24.

[7] To the extent Claimant argues that the ALJ erred in not explaining his consideration of the treatment relationship, specialization, and "other factors," the Court finds this argument unpersuasive. Under the new regulations, an ALJ is not required to explain consideration of these factors. *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019).

[8] To the extent Claimant relies upon *Schink*, the Court finds it distinguishable. Indeed, it appears that Claimant cites the portions of *Schink* dealing with the "good cause" standard for discounting treating physician opinions under the old regulations. *See* Doc. 25 at 23; *see Schink v. Commissioner of Soc. Sec.*, 935 F.3d 1245, 1262–1263 (11th. Cir. 2019) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) and *MacGregor v. Bowen*, 786 F.2d 1050, 1053–1054 (11th Cir. 1986)). As Claimant does not explain if, or how, the good cause standard applies under the new regulations, the Court finds this reliance unpersuasive.

### B. Dr. Austin's Opinion

Claimant next argues that the ALJ did not properly discount Dr. Austin's medical opinion. Claimant's argument consists of, essentially, pointing to parts of Dr. Austin's findings that are consistent with a finding of disability. But "[u]nder a substantial evidence standard of review, [Claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). And again, it is not this Court's function to reweigh the medical evidence. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011).

The ALJ stated the following with respect to Dr. Austin's opinion:

> Subsequent intelligence testing, conducted in February 2019, reflects borderline to low-average intellectual functioning, with a full scale IQ score of 76, within the borderline range. (8F at 5). Memory testing, also conducted that month, reflects extremely low auditory, visual, visual working, immediate, and delayed memory scores. (8F at 5). These findings are inconsistent with most if not all of the other available evidence, including the conclusion of William Austin, Psy.D., and Roy E. Arroyo, Psy.D., the mental consultative examiners who conducted these tests, that the claimant remained capable of handling funds independently. (8F at 6).
>
> Drs. Austin and Arroyo opined the claimant's social functioning was limited, but attributed this to her own report. This finding is not supported by the examiners' own objective findings, and is inconsistent with the rest of the objective evidence reviewed herein, which does not establish a significant social limitation. The consultative examiners also opined the claimant's functional ability was limited by anxiety, situational related depression, and assessed memory functioning. (8F at 6). This finding is extremely vague, and, to the extent it indicates that the claimant has at least a moderate limitation in her ability to socialize or adapt or manage herself, it is not supported by the examiners' own findings, and is inconsistent with the above-discussed evidence, and the record as a whole. Additionally, as discussed in the prior finding, the record does not establish that the claimant's anxiety and affective disorders generate any significant functional limitation. For these reasons, I did not find this opinion persuasive.
>
> . . .

> The mental treatment and examination evidence has been extensively discussed in the prior finding. In determining the claimant's residual mental functional capacity, I was not persuaded by the opinions of Drs. Austin and Arroyo, the mental CEs, for the reasons discussed in that finding. (8F at 6). I was also unpersuaded by the opinion of Dr. Weiss, who indicated the claimant was unable to tolerate stress, a finding that is not supported by his own treatment notes, and is inconsistent with the previously-discussed evidence, and the record as a whole. (10F at 1-4). As discussed in the prior finding, while the record includes some worrying test results regarding the claimant's intellectual and memory functioning, treatment providers have not observed signs consistent with greater than moderate limitation in the claimant's ability to understand, remember, apply information, concentrate, persist, or maintain pace.

R. 23, 29.

The ALJ found Dr. Austin's opinion was unsupported by Dr. Austin's objective findings and was inconsistent with the medical record as a whole. Additionally, the ALJ found Dr. Austin's opinion that Claimant's functional capacity was limited by anxiety, depression, and memory function to be "extremely vague." R. 23.

The Court finds no reversible error. The ALJ comprehensively discussed the record evidence, R. 22–24, and found that it did not support Dr. Austin's opinion. Specifically, the ALJ found that "the record does not establish that the claimant's anxiety and affective disorders generate any significant functional limitation" and that the record "does not establish a significant social limitation." R. 23. The ALJ also found Dr. Austin's conclusion that Claimant could independently handle her own funds to be significant. *Id.* Claimant's arguments to the contrary essentially ask the Court to reweigh the evidence, which is not this Court's function. *Winschel*, 631 F.3d at 1178 (11th Cir. 2011). The ALJ's findings as to Dr. Austin's opinions are supported by substantial evidence, and thus the Court finds no reversible error.

### C.  Dr. Rodriguez's Opinion

Claimant finally argues that the ALJ improperly relied upon Dr. Rodriguez's medical opinion. The Court rejects this argument.

The ALJ stated the following with respect to Dr. Rodriguez's opinion:

I also considered the opinions of the State agency's medical consultants, which were rendered in September 2018, just prior to her second accident; and in February 2019, about four months after that accident. (1A; 3A). Although these opinions reflect the worsening in the claimant's condition after this accident, they do not support the extreme limitations suggested by Dr. Weiss, or the lifting and carrying limitations suggested by Dr. Buggia. David Guttman, M.D., who reviewed the record at the initial level, opined the claimant could perform work requiring light exertion, frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs, occasional climbing of ladders ropes, or scaffolds, and no concentrated exposure to hazards. (1A at 8-10). Christina Rodriguez, M.D., who reviewed the record at the reconsideration level, opined the claimant remained capable of performing work requiring light exertion, with no concentrated exposure to hazards, but now could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and could never climb ladders, ropes, or scaffolds. (3A at 10-12).

While each consultant's opinion is reasonably supported by the evidence they cite, and is generally consistent with the above-discussed evidence, and the record as a whole, I find that Dr. Rodriguez's opinion better reflects the greatest level of chronic limitation the claimant has experienced since the alleged onset date. Considering the nature of the claimant's spinal impairments, I also conclude that the record supports an additional restriction in her ability to work in environments with greater than occasional exposure to vibration. I also find that the claimant's migraine disorder limits her to the performance of work in a moderate noise work environment.1 Additionally, while the above-discussed evidence, and the record as a whole, provides imperfect support for the claimant's alleged upper extremity limitations, I find that it does establish that she has been limited to work requiring frequent pushing, pulling, overhead reaching, and/or operation of hand controls with the upper extremities. For these reasons, I found each consultant's opinion only somewhat persuasive.

R. 28.

It appears that Claimant is arguing that the ALJ erred in finding Dr. Rodriguez's opinion persuasive because Dr. Rodriguez was unable to review some of the records that came after her opinion. But it is the ALJ, not Dr. Rodriguez, who is tasked with reviewing the entirety of the record. And the ALJ did comprehensively view the entirety of the record here, including both favorable and unfavorable facts. Based on this comprehensive view, the ALJ found that Dr.

Rodriguez's opinion better reflected the "greatest level of chronic limitation the claimant has experienced since the alleged onset date." R. 28.

It also appears that Claimant argues the ALJ erred by finding Dr. Rodriguez's opinion more persuasive than Dr. Weiss's opinion because Dr. Rodriguez was a non-examining physician and was not a neurologist, while Dr. Weiss was both an examining physician and a neurologist. But under the new regulations, it is not apparent that this mandates special deference to Dr. Weiss's opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019); c*f. Macgregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ properly relied upon Dr. Rodriguez's opinion, finding that it was supported and that it was the most consistent with the medical record as a whole.

Accordingly, the Court finds no reversible error.

### IV. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the Commissioner's decision is due to be affirmed.

For the stated reasons, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on February 25, 2022.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE